~ FILED

9? SEP 13 PM 2: 11

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

SEP 1 3 1999

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

PEGGY ENGLAND,                     ]
                                   ]
    Plaintiff,                     ]
                                   ]
vs.                                ]   CV-98-N-1029-S
                                   ]   (E-FILE CASE)
COMPASS BANK,                      ]
                                   ]
    Defendant.                     ]

## Memorandum of Opinion

### I.    Introduction.

The court has for consideration defendant's motion for summary judgment filed May

28, 1999.[1]  The issues have been briefed by both parties and are now ripe for decision.

In this employment discrimination case, the plaintiff Peggy England ("Ms. England"),

brings suit against her former employer, Compass Bank ("Compass"). The plaintiff alleges

that the defendant discriminated against her on the basis of her sex, and that the defendant

retaliated against her for complaining about sex discrimination in her compensation and

staffing. Ms. England asserts these claims against Compass pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").  In addition, the

plaintiff asserts a claim against the defendant arising from an alleged violation of the Equal

---

[1]In a related matter, the court has for consideration defendant's motion to strike, filed July 12, 1999, in which the defendants have moved to strike portions of the affidavits of Ms. England, submitted in support of plaintiff's opposition to summary judgment. Also, the court has for consideration the defendant's motion to deem facts admitted, filed July 12, 1999, submitted to the court to deem certain facts in non-movants statement of facts as admitted for purposes of summary judgment. Ms. England has had an opportunity to respond to both motions. The court will consider these motions contemporaneously with the motion for summary judgment and will disregard any portions of the affidavit and deem facts admitted which are not properly before the court on summary judgment.



E-FILE   129

Pay Act of 1963, as amended, 29 U.S.C. § 206. Finally, Ms. England asserts against Compass the state law claims of defamation, intentional interference with business relations, invasion of privacy, breach of contract, and fraud.

**II.    Statement of Facts**[2].

Ms. England was employed with Compass Bank in its Trust Division from September 8, 1980 to January 31, 1997. According to the 1996 Annual Incentive Plan, Ms. England's title was Vice President and Trust Officer. Her responsibility was designated as "Compass Trust - Group Benefits Manager." In general, the Group Benefits division of the bank provided unique bookkeeping services in connection with health care products such as Section 501(c)(9) trusts, flex plans, and Hour Bank Record Keeping. In addition to the foregoing, Ms. England was also responsible for budgeting for the department that she managed, for attending staff meetings, and for the amount of revenue her department generated. Furthermore, the plaintiff supervised administrative assistants, a coordinator, and a data entry operator. At the time Ms. England's position was eliminated, she was classified as a pay grade 20 employee.

Two of England's charges, failure to receive a bonus and failure to receive stock options, date back to as early as 1994. According to England, she did not receive a bonus in 1994 or 1996 even though she had met the bank's bonus requirements. However, the bank disputes England's charges that she had met such requirements. In addition, England

---

[2] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386, 1400 (11th Cir 1994).

did not receive stock options.  According to Vice President of Human Resources Fred Martin ("Martin"), stock-options were totally discretionary.  The options were distributed based on the employee's position in the bank, level of responsibility, job performance, long term potential, and financial contribution.  In addition, stock options were subject to the "stock option guidelines."

The majority of facts integral to England's case occurred between September of 1995 and March of 1997.  In September of 1995, during her performance evaluation, Ms. England informed her supervisor at the time, Vance Davidson ("Davidson"), that she had set a personal goal of earning the title of Group Benefits Department Manager and Senior Trust Officer.  According to Ms. England, it was during this evaluation that she complained to Davidson that she also wanted to have the same title and benefits of the other managers. According to Ms. England, Davidson agreed that the plaintiff deserved the same title and benefits, and that he would take appropriate action in January of 1996.  From the facts before the court, it appears that the relationship between Compass and Ms. England began to deteriorate following this evaluation.

In January of 1996, Ms. England realized that she had not received a title and pay grade change when three males - Ken Cain, Brian Luqurie, and Larry Watson - all had received raises and promotions. According to the plaintiff, she complained about the raises to Davidson, Vice President of Human Resources Martin,  and the bank's general counsel Jerry Powell ("Powell").  In addition to the failure to receive a raise/promotion, it was in early 1996 that Ms. England asserts that Davidson began verbally harassing her about her work performance.  Again, she complained to Martin and Powell about her status at the

3

bank. Moreover, by May of 1996, England concluded that the extra staff she had wanted would not be provided. In approximately August of 1996, Davidson was dismissed from his position at Compass. However, the new department head, Steve Ferguson ("Ferguson"), did not discuss England's complaints with her.

The arrival of Steve Ferguson was accompanied by a major change in the trust division of the bank. In September or October of 1996, Ferguson made the decision to close the Corporate Trust department and the Group Benefits department. According to Ferguson, his goal was to restructure the Trust Division so that it retained only lines of business consistent with the bank's asset management strategy. In particular, Ferguson saw Group Benefits as an administrative record keeping function that did not fit within the asset management focus of the bank. On October 30, 1996, England was informed by Fred Martin and Don Robinson that a decision had been made to close her department. As part of the decision to close the Group Benefits department, England was informed that her job would be eliminated.

However, England's relationship with the bank did not end in October of 1996. In early November of 1996, Powell, the bank's general counsel, spoke with England about the possibility of her taking over the Group Benefits business. On November 18, 1996, England, her attorneys, Richard Ogle ("Ogle) and Gilbert Sullivan ("Sullivan"), and Powell met to discuss what might need to be done to transfer the Group Benefits business to England. Pursuant to this discussion, in December of 1996, Ogle and Powell began general negotiations concerning the transfer of business. Even though Ogle and Powell could not agree to the specifics of Ms. England's "wish list" for her new business, England wanted

4

to go forward with the negotiations. On December 11, 1996, Ogle proposed by letter to Powell a settlement package addressing the following issues: salary continuation, other personnel, equipment and furniture, computer software, fees, lease guarantees, a credit line, and attorney fees.[3]

Although the letter sparked negotiations between the parties, nothing was put in writing concerning any agreements between Powell, Ogle, and Sullivan. Consequently, in late December of 1996, Powell recommended to Ferguson that negotiations cease with England and the bank should look in a different direction. Powell received authority form Ferguson to break off negotiations with England and pursue negotiations with Bill Riddle. On December 30, 1996, Powell informed Sullivan that Compass had decided to go in a different direction, and transfer the Group Benefits business to Bill Riddle.

England's last work day at Compass was December 30, 1996; however, her employment with Compass did not officially end until January 31, 1997, the date on which her position was eliminated. England received a lump sum severance upon the termination of her employment. In January or February of 1997, England started a business called Professional Benefits Group, Inc. As of August 26, 1998, England had nineteen customers for which she provided services; eleven of those were customers whose accounts she had serviced while employed at Compass Bank.

England filed her EEOC charge on March 17, 1997. Ms. England alleged that Compass discriminated on the basis of sex in discharge, discipline, promotions, pay,

---

[3] England admits that the December 11, 1996 letter from Ogle to Powell was a counteroffer or a proposal.

benefits, and other terms and conditions of employment. On April 28, 1998, England filed her complaint against Compass Bank in the Untied States District Court for the Northern District of Alabama, Southern Division, alleging (1) sex discrimination; (2) retaliation under Title VII; (3) a violation of the Equal Pay Act; (4) defamation and libel; (5) intentional interference with her professional and business relationships; (6) invasion of privacy; (7) breach of contract in failing to give the Group Benefits business to her; (8) breach of contract in failing to pay her a bonus; and (9) fraud and class allegations. On June 4, 1998, the Court granted England's motion to amend her complaint. She withdrew her class allegations and more clearly identified the facts applicable to each count in the complaint.

## III. Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*,

6

477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law." *Id*. at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731,

745 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very

close" to that for motions for directed verdict). However, the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the

evidence is "merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*,

873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented

through the prism of the substantive evidentiary burden," so there must be sufficient

evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254;

*Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless,

credibility determinations, the weighing of evidence, and the drawing of inferences from

the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be

believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at

255. The nonmovant need not be given the benefit of every inference but only of every

reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV.    Discussion**.

       **A.    Sex Discrimination**.

       Title VII of the Civil Rights Act provides, in part, that it is unlawful for an employer "to

fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's sex." 42 U.S.C. § 2000e-2(a)(1). Ms. England contends that

8

she was discriminated against on the basis of her sex because Compass failed to give her the same title, pay, benefits, and support staff as her male counterparts. Specifically, England contends that she was not given the title of *Senior* Trust Officer, a pay grade of 21 or higher, certain benefits, and a support staff that were given to her male comparators.

As a threshold matter, defendants seek to limit the adverse actions Ms. England can base her claim on because some of the actions taken by Compass were not raised in a timely EEOC charge. Title VII requires that an employee file an EEOC charge within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5; *Welty v. S.F.G., Inc.*, 605 F.Supp. 1548, 1553 (N.D. Ala. 1985). Therefore, a Title VII claim cannot be based on discriminatory actions taken more than 180 days before the EEOC charge was filed. Ms. England filed her EEOC charge on March 17, 1997, making claims based on any action taken before September 18, 1996 untimely.

Ms. England attempts to resurrect her time-barred claims by invoking the continuing violation exception to the 180 day rule. In a lawsuit claiming that a defendant engaged in a continuous course of conduct that caused damage, plaintiffs can recover for damages that preceded the limitations period if they stem from a persistent process of illegal discrimination. *Tyus v. Urban Search Management*, 102 F.3d 256, 265-66 (7th Cir. 1996), *reh'g denied*, Jan. 6, 1997, *cert. denied*, 117 S. Ct. 2409 (1997). In determining the existence of a continuing violation, the Eleventh Circuit distinguishes between the "'present consequence of a one-time violation,' which does not extend the limitations period, and the

'continuation of a violation into the present,' which does."[4] *Beavers v. ACIPCO*, 975 F.2d 792, 796 (11th Cir. 1992). A continuing violation is not merely the perpetuation of the effect of a previous act of discrimination committed outside of the filing period. *United Airlines v. Evans*, 431 U.S. 553, 558 (1983). Nor is it an unconnected string of discrete discriminatory acts against the plaintiff. A persistent, on-going pattern of similar discriminatory acts is required.[5] For this reason, the continuing violation exception is most typically applied to an action like a hostile environment claim, where the charge, by its own terms, necessitates a pattern of incidents occurring over an extended period and where often the unlawfulness is not apparent until the incidents can be viewed in the aggregate. *Hull v. Case Corp.*, 1993 WL 603554 (S.D. Fla. 1993) (unpublished); *see e.g., Stockett v. Tolin*, 791 F. Supp. 1536 (S.D. Fla. 1992) (allowing the plaintiff to plead incidents spread over several years, where those

---

[4] The case of *Knight v. Columbus, Ga.*, apparently enunciates the present state of the law in this regard. There, the court, quoting *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241 (5th Cir. 1980), stated:

> "[T]he critical question is whether any present violation exists. . . . [W]here the employer engaged in a discrete act of discrimination [outside the limitations period], allegations that the discriminatory act continues to adversely affect the employee or that the employer [presently refuses to rectify its past violation will not satisfy the statute of limitations]." *Gonzalez*, 610 F.2d at 249 (citations omitted). The critical distinction in the continuing violation analysis, therefore, is whether the plaintiffs complain of "the present consequence of a one time violation, which does not extend the limitations period, [or] the continuation of that violation into the present, which does." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993) (citations omitted).

*Knight v. Columbus, Ga.*, 19 F.3d 579, 580-581 (11th Cir. 1994), *cert. denied*, 15 S. Ct. 318 (1994) (applying Title VII cases to the Fair Labor Standards Act).

[5] One set of guidelines, adopted by a number of courts, instructs a court to look to several factors, including (1) the subject matter, whether the acts involve similar types of discrimination, (2) the frequency, whether the acts are isolated incidents or everyday occurrences, and (3) the degree of permanence, whether the act is likely to trigger the victim's awareness of and duty to assert her rights. *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983), *cert. denied*, 479 U.S. 868 (1986); *see also Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 800-01, *withdrawn on rehearing by* 850 F.2d 1549 (11th Cir. 1988); *Clark v. City of Macon, Ga.*, 860 F. Supp. 1545, 1550 (M.D. Ga. 1994).

incidents taken together created a hostile environment and where the last of those incidents occurred within the limitations period).

Whether alleged discriminatory acts constitute a continuing violation is a finding of fact. *Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir. 1993); *Patterson v. Augat Wiring Systems, Inc.,* 944 F. Supp. 1509, 1518 (M.D. Ala. 1996). However, as always, if there is no reasonable factual inference, the issue must be determined as one of law. Based on the facts as construed in plaintiff's favor, there is no reasonable factual inference that the failure to assign England a new title or give her a larger staff form a pattern of discrimination that injures Ms. England. Essentially, these claims are based on two events which occurred in a four month period. Moreover, the stock options and bonus allegations are also isolated events that do not form a persistent process of illegal discrimination. All of the foregoing instances are discrete acts that do not meet the continuing violation standard. Consequently, none of the above situations create the persistent, ongoing pattern of similar discriminatory acts required to meet the continuing violations standard.

However, the court recognizes that a failure to receive a raise claim can potentially be a continuing violation. *See Bazemore v. Friday*, 478 U.S. 385 (1986). In *Bazemore*, the Court concluded that each week's paycheck that delivers less to a black man than to a similarly situated white is a wrong actionable under Title VII. *Id.* at 396-7. Consequently, under the paycheck theory, England's wage claim may be construed as a continuing violation and not time-barred. However, the existence of an alleged continuing violation by itself does not end the analysis for summary judgment purposes.

11

The McDonnell Douglas framework is used to analyze the parties' burdens in gender based wage discrimination claims. McDonnell Douglas instructs that:

> The plaintiff first has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. The burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for the alleged discrimination. If the defendant produces such a reason, the plaintiff must then prove that the legitimate reason offered was a mere pretext for an illegal motive.

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973). In order for England to make a Title VII prima facie case, she must show that her job was substantially similar to higher paying jobs occupied by males. *Mulhall v. Advance Security*, 19 F.3d 586, 598 (11th Cir. 1994). The standard for similarity in Title VII cases is relaxed, and defendant's burden in rebutting the prima facie case is "exceedingly light." *Id.* If defendant meets his burden of production, the presumption raised by the prima facie case is rebutted. *Id.* Plaintiff then must demonstrate that the employer's legitimate reason was in fact, pretextual. *Id.* At summary judgment, plaintiff's burden is simply to raise a genuine factual question as to the existence of pretext. *Id.* However, summary judgment is appropriate when evidence of discriminatory intent is totally lacking. *Id.*

In order to make a prima facie case, England must show that her position was substantially similar to the positions of Ken Cain, Brian Luqurie, and Larry Watson, the three males who received January 1996 raises. England argues that her burden of proving a prima facie case is satisfied because her supervisor, Vance Davidson, told England that she deserved the same compensation as male department managers, and General Counsel Jerry Powell told her, after discussions regarding pay disparity, that she should sue the

bank. While the statements indicate the opinions of Davidson and Powell, they do not present sufficient evidence that England's position was similarly situated to that of her male counterparts. Moreover, in her response brief, England does not compare her specific duties and responsibilities to those of Cain, Luqurie, and Watson. As a result, England has not established a prima facie case of sex discriminaiton.

Even if the comments were enough to satisfy a prima facie case, Compass has clearly articulated legitimate nondiscriminatory reasons for the pay difference. Every other department manager controlled different functions, and a larger budget, supervised more people, managed more highly trained and highly-graded people, and brought in more money to the division. In addition, every other department manager had at least a college degree, whereas England did not.

In response to Compass' nondiscriminatory reasons, England has not raised a genuine factual question as to the existence of pretext. The plaintiff attempts to show pretext by claiming that Compass' justifications were based on facts that it either did not know or did not consider at the time the raise decision was made. *See Turnes v. AmSouth*, 36 F.3d 1057 (11th Cir. 1994). As for the lack of knowledge argument, Compass knew the budget, employees, and supervisory functions of other departments before January of 1996. As for the lack of consideration argument, England does not offer any evidence to show that Compass did not consider the non-discriminatory factors when it considered the raises. In comparison Compass explained in detail why the pay decisions were made. Consequently, England's sex discrimination claim based on disparate wages is dismissed.

13

Even under the continuing violation doctrine, courts do not have infinite patience. The victim cannot sit back and permit violations to accumulate, especially when he is aware of his rights. In *Roberts v. Gadsden Memorial Hospital*, 850 F.2d 1549, 1550, (11th Cir. 1988), the Eleventh Circuit considered whether time-barred acts of the defendant could form the basis of a claim, even if they were part of a continuing violation, if the plaintiff was aware of his rights at the time of the violation. The court said:

> [E]ven if we assume that the 1978 discriminatory act continued into the statutory filing period, we must still conclude that [plaintiff's] claim based on the incident is time barred. [Plaintiff] admitted that he was aware of his rights in 1978. He could have asserted them at that time. To the extent that [defendant] injured him on a continuing basis as a result of the 1978 incident, it was only because he knowingly failed to exercise his rights. A claim arising out of an injury which is continuing only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the 180-day limitation period.

*Id.*; *see Sabree v. United Brotherhood of Carpenters and Joiners No. 33*, 921 F.2d 386, 402 (1st Cir. 1990) ("'what matters is when and to what extent the plaintiff was on inquiry notice'")(citation omitted); *Waltman v. International Paper Co.*, 875 F.2d 468, 476 (5th Cir. 1989); *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983), *cert. denied*, 479 U.S. 868 (1986) (most important question in evaluating continuing violation is "whether the act is likely to trigger the victim's awareness of and duty to assert her rights"). Thus a plaintiff who believes his rights are being violated by similar, repeated slights is not entitled to rely on the continuing violation doctrine to revive old claims. *See, e.g., Lane v. Huckaby*, 1998 WL 427553, at *10-11 (M.D. Ala. 1998) (plaintiff repeatedly passed over for promotion to the same position could not sue for time-barred injuries because she "was aware - at least she believed - she had been discriminated against" each time).

14

The undisputed facts indicate that Ms. England was aware of not having received stock options, a bonus, a larger support staff, a raise, and title change before September 18, 1996. Moreover, throughout the early months of 1996, Ms. England complained to supervisors and officials of Compass about her work conditions. Clearly, she understood and felt discriminated against months before the September deadline. In particular, England knew she had not received an increased pay grade in January of 1996. Furthermore, Ms. England knew of the denial of the 1994 bonus for almost two years before she filed her EEOC charge. In addition, she realized she would not receive the 1996 bonus in July of 1996. Finally, she knew well before September of 1996 that she would not receive stock options in 1994, 1995, and 1996. Accordingly, any actions taken before September 18, 1996, are time-barred and cannot form the basis of a sex discrimination claim in this lawsuit.

The only actions taken by Compass during the requisite 180 days concern the termination of the Group Benefits department. However, in her responsive motion Ms. England fails to make an argument responding or rebutting the substantial evidence presented by the defendant demonstrating that the decision to eliminate the department was not based on impermissible motives. In fact, in her responsive motion, it clearly appears that Ms. England is not alleging that the decision to close the department was based on her gender.

### B. Retaliation.

Title VII protects employees from discrimination by employers when the employee has opposed any practice made unlawful by Title VII.[6] 42 U.S.C. § 2000e-3(a). A plaintiff need not prove the actual existence of those unlawful employment practices; rather, he need only have a reasonable belief that the defendant engaged in such practices. *Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989), *reh'g denied*, 871 F.2d 122 (1989); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A 1981), *reh'g denied*, 660 F.2d 497 (1981), *cert. denied*, 455 U.S. 1000 (1982). Ms. England alleges that she was subjected to the following acts of retaliation as a result of complaining to Vance Davidson, Fred Martin, Jerry Powell, and Steve Ferguson about sex discrimination in her compensation and staffing: (1) Davidson's abusive conduct between January and August 1996; (2) the closure of her department; (3) the Defendant's failure to transfer the Group Benefits business to her; (4) the Defendant's publishing of the January 1997 letter to Group Benefits customers informing them that England would not receive the business; (5) the Defendant's decision to transfer the business to Riddle; and (6) the Defendant's refusal to place her in any other positions within the bank.

---

[6] The relevant portion of the statute states as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

16

In order to make out a prima facie case of retaliatory discharge, the plaintiff must show that (1) he or she was engaged in statutorily protected expression, (2) his or her employer took an adverse employment action against him or her, and (3) a causal link exists between the protected expression and the adverse action. *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997). Once a prima facie case is established, the defendant must articulate some legitimate, nondiscriminatory reason for the plaintiff's termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that this reason is merely a pretext for discrimination. *Id.* at 804.

In the Eleventh Circuit, "statutorily protected expression" includes filing an EEOC charge, 42 U.S.C. § 2000e-3(a), formal and informal complaints to an employer, *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989), written protests, *Smalley v. City of Eatonville*, 640 F.2d 765 (5th Cir. Unit B 1981), and warnings from employers not to complain about alleged discriminatory practices, *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992).

### 1.    Davidson's Conduct.

Davidson's allegedly abusive conduct does not fall within the 180-day rule. From January to August of 1996 England was reasonably put on notice that her complaints could have caused Davidson's adverse conduct. Accordingly, England's retaliation claim can not be based on the conduct of Davidson. However, the other allegedly retaliatory conduct by Compass falls within the 180 day period.

17

2.    **Closing the Department; Not Transferring the Business to England; Transferring the Business to Riddle**.

When England complained to her supervisors and Compass officials regarding sex discrimination, she participated in statutorily protected expression. 42 U.S.C. § 2000e-3(a). However, a viable retaliation claim also requires that Compass must have taken an adverse employment action against England, and that a causal link existed between the protected expression and the adverse action. Both of these elements require that the decisionmaker know of the protected conduct at the time of the adverse employment action. *See Clover v. Total System Services*, 176 F.3d 1346, 1354 (11th Cir. 1999); *Sullivan v. National Railroad Passenger Corp.,* 170 F.3d 1056, 1060 (11th Cir. 1999). The undisputed facts indicate that Steve Ferguson was solely responsible for the closing of England's department, he ultimately made the decision not to transfer the Group Benefits department to England, and he made the decision to transfer the Group Benefits business to Riddle. Compass, by reference to the materials on file, has shown that Ferguson did not know of England's complaints of sex discrimination. England's only rebuttal to Ferguson's lack of knowledge is that Ferguson did not recall whether England's complaints to him were based upon sex. A simple "I don't recall" does not meet the burden England must demonstrate to show a material issue of fact in regards to Ferguson's knowledge. Consequently, since the evidence indicates that Ferguson had no knowledge of England's complaints based on sex, England has not satisfied her burden as to the retaliation claims predicated on the closing of her department, the negotiations with Riddle, and Compass's decision to transfer the business to Riddle.

18

### 3.    January 1997 Letter.

England asserts that the January 1997 letter to Group Benefits customers informing them that England would not receive the business demonstrates that she was retaliated against by Compass. However, this letter, by itself, is not an adverse employment action against England. While termination is not required to create an "adverse employment action," a letter to customers describing the status of the group benefits department does not rise to a level of discrimination. *See Wideman v. Wal-Mart*, 141 F.3d. 1453, 1456 (11th Cir. 1998). The actual letter sent to Compass customers did not even mention Ms. England by name. It simply stated that the Groups Benefits Department was being eliminated, and Bill Riddle's company, Flexible Corporate Plans, Inc., was assisting Compass with the transition. Moreover, Ms. England admits that Compass had a fiduciary duty to inform its clients of the changes in the department. Accordingly, England's retaliation claim can not be based upon the January of 1997 letter.

### 4.    Failure to Place England In Another Position.

The court is satisfied that England has established a prima facie case of retaliation based upon the failure of Compass to place her in another position at the bank. As articulated above, England's comments regarding sex discrimination are considered a protected activity. Moreover, a failure to transfer can be an adverse employment action. *See id.* Finally, Compass has not presented any evidence that indicates a lack of causal connection between the complaints and the failure to be transferred. However, establishing a prima facie case does not automatically get the plaintiff past summary judgment.

19

Once a plaintiff makes out a prima facie case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Sullivan*, 170 F.3d. at 1059. Compass asserts that it did not have a position for Peggy England in the new organization because she had no trust experience, no experience managing long-term investments, and no experience in the administration of products outside her department. In addition, Steve Ferguson stated that he was only looking for applicants to fill investment related positions. Finally, England does not dispute that she did not bid on any job outside the department. All of the above satisfy Compass's burden to articulate nondiscriminatory reasons for its conduct.

The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that this reason is merely a pretext for discrimination. *Id.* at 804. Because the plaintiff bears the burden of establishing pretext, she must present significantly probative evidence on the issue to avoid summary judgment. *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d. 436, 444 (11th Cir. 1996). The plaintiff may prove that the defendant intentionally discriminated against her either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989). Steve Ferguson explicitly stated that he was looking for someone with investment experience to work in the new organization. Ms. England has failed to present probative evidence that she had such experience. In her deposition she admitted that she did not handle any investments related to certain trusts. Moreover, when asked if she had any facts leading to the conclusion that she was not transferred because

20

of her complaints England replied, "I don't know why any of those things are happening."

Finally, in her response brief, the Plaintiff does not address the issue of pretext in relation

to not being transferred within the bank. As a result, England's retaliation claims warrant

summary judgment for the defendant.

### C.    Equal Pay Act.

In order to establish a prima facie case under the EPA, the plaintiff must show that

an employer pays different wages to employees of opposite sexes for equal work on the

jobs the performance of which are performed under similar working conditions. *Corning

Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). In her response brief, England contends

that since she has allegedly offered direct evidence of discrimination, her EPA claim

automatically survives summary judgment. This is not so. *See   Equal Employment

Opportunity Commission v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1569 (11th Cir. 1993).

Compass has presented substantial evidence that England's job did not require the same

skill, effort, and responsibility as a higher paid jobs performed by her male comparators In

response, England has not met her burden to demonstrate that a material issue exists.

Having failed to establish a prima facie case of pay discrimination under the Equal Pay Act,

the plaintiff cannot prevail on this claim.

### V.    State Law Claims.

#### A.    Defamation and Invasion of Privacy.

The moving party bears the initial burden to show the court, by reference to

materials on file, that there are no genuine issues of material fact that should be decided

at trial. *Clark v. Coats & Clark Inc.*, 929 F.2d 604, 608 (11th Cir. 1994). Only when that

burden has been met does it shift to the non-moving party to demonstrate that there is
indeed a material issue of fact that precludes summary judgment. *Id.* Compass presented
sufficient evidence to meet its burden in regards to the defamation and invasion of privacy
claims. The plaintiff did not address her defamation or invasion of privacy claim in her
responsive brief. Consequently, she has not met her burden. Thus, summary judgment is
appropriate as to both claims.

     **B.**    **Intentional Interference with Business Relations.**

     To recover on a claim of intentional interference with business or contractual
relations, a plaintiff must prove the following elements: (1) The existence of a contract or
business relation; (2) the defendant's knowledge of the contract or business relation; (3)
intentional interference by the defendant with the plaintiff's contract or business relation;
and (4) damage to the plaintiff as a result of the defendant's interference. Additionally,
plaintiffs must produce substantial evidence of fraud, force or coercion on the defendant's
part. *Barber v. Business Products Center, Inc.*, 677 So.2d 223, 227 (Ala. 1996). It is not
clear by the plaintiff's response what she is actually alleging was interfered with. The only
specific "relationships" mentioned concern  Blue Cross/Blue Shield & Nancy Westin.
However, the plaintiff fails to articulate any contractual or business relationship with either
party outside of her work at Compass. England admits in her deposition that these are the
bank's customers, and not hers. Furthermore, the plaintiff has failed to rebut the
defendant's showing that she has not suffered damages as a result of the alleged
interference. Finally, the plaintiff failed to demonstrate any examples of fraud, force, or

coercion on the part of Compass. In accord with the foregoing analysis, Compass's motion for summary judgment on the intentional interference claim is granted.

### C.    Breach of Contract.

#### 1.    Failure to Get Group Benefits Business.

England contends that Compass breached its contract by failing to transfer the Groups Benefit business to her. Proof of breach of contract requires (1) that the agreement existed; (2) that the defendant breached the agreement; and (3) that the plaintiff was damaged as a result of the breach. *Sokol v. Bruno's, Inc.*, 527 So.2d 1245, 1247-48 (Ala. 1998). Where contracts are so vague and indefinite in terms that the intention of the parties cannot be fairly and reasonably collected from them, the court will not undertake to give them effect. *Alabama National Life Insurance Company v. National Union Life Insurance Company*, 151 So.2d 762, 766 (Ala. 1963). Moreover, under Alabama law, courts will not enforce an "agreement to agree." *Mims, Lymance, and Reich, Inc.*, 620 So.2d 594, 600 (Ala. 1993). Compass asserts the defense that there was no agreement, and even if there was, it was void under the statute of frauds because it involved a commitment to loan money. *See* ALA. CODE 8-9-2(7).

The evidence indicates that the parties had nothing more than an agreement to agree. Ms. England admits there were no agreed upon terms and there was no formal written agreement between herself and Compass. In addition, the parties never even reached an agreement on a number of essential terms such as line of credit, length of salary continuation, attorney fees, and terms of the hardware transfer. The correspondence between the two parties clearly indicates that both parties were in the very early stages of

23

negotiations. Nothing from either party suggests that a binding contract had been created. As a result, the alleged contractual arrangement was so indefinite as to its terms, the court can not undertake to give it effect.

### 2.    **Breach of Contract - Bonus**.

Ms. England alleges that Compass breached its contract to award her a bonus in 1994 and 1996. Documents presented by Compass clearly show that only employees who were on the payroll at the time bonuses were paid were eligible to receive them. When the 1996 bonus was paid, Ms. England was not employed by Compass Bank. Moreover, in her response brief, the plaintiff failed to adequately address the 1996 bonus. Accordingly, Compass did not breach any contract in regards to the 1996 bonus.

As for 1994, Compass has produced evidence that shows that Ms. England did not meet the requirements for a bonus. However, Ms. England has presented a chart which suggests that she did meet the criteria for a 1994 bonus. As a result, Ms. England has satisfied her burden to demonstrate an issue of material fact that precludes summary judgment on this one claim. Compass argues that the chart is inadmissible for summary judgment purposes because it has not been authenticated and it violates the so-called best evidence rule. The general rule is that otherwise admissible evidence can be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form. *McMillan v. Johnson*, 88 F.3d. 1573, 1584 (1996). The chart produced by England can not be precluded from being considered at the summary judgment stage because it can be authenticated at trial. In fact, it is likely that Ms. England herself will authenticate the chart as one used by Compass when she testifies. It then becomes a

24

matter for the jury to decide which documents, those produced by Compass or those produced by England, are accurate depictions of Ms. England's 1994 revenue. Therefore, the defendant's motion for summary judgment as it relates to the 1994 bonus will be denied.

The discretion to entertain or dismiss the pendent state law claims continues throughout the judicial proceeding. *L.A. Draper & Son v. Wheelbrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). This discretion is guided by four factors (1) whether the state law claim predominates in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought; (2) whether comity considerations warrant determination by a state court; (3) whether judicial economy, convenience, and fairness to the litigants would best be served by trying the federal and state claims together; and (4) whether the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. *Id.* This matter is scheduled for an October 12, 1999 trial date. Consequently, judicial economy, convenience, and fairness to the litigants serve as sufficient reasons for the court to retain jurisdiction over the state law breach of contract claim regarding the 1994 bonus.

### D.    Fraud

While the plaintiff's brief is not a model of clarity, it appears that she is actually asserting a promissory fraud claim and a fraudulent inducement claim. In order to establish promissory fraud, a plaintiff must show: (1) a false representation; (2) of an existing material fact; (3) that is justifiably relied upon; (4) damage resulting as a proximate cause; and that, (5) at the time of the misrepresentation, the defendant had the intention not to perform the promised act, and (6) that the defendant had the intent to deceive. Compass asserts that

it did not have a contemporaneous intent not to perform. In response, England admits that she has no evidence leading her to the conclusion that when Jerry Powell made the statement that England would get the business, he had no intention of following through on that statement. Moreover, the defendant demonstrates that Ms. England did not justifiably rely upon the representation of Compass officials. Ms. England has failed to present any sufficient evidence to rebut the lack of reliance argument.

Additionally, Plaintiff relies on *Kidder v. AmSouth,* 639 So.2d 1361 (Ala. 1994), to seemingly assert a fraudulent inducement claim. Elements of actionable fraud based on misrepresentation are: (1) duty to speak the truth; (2) false representation of material existing fact made intentionally, recklessly, or innocently; (3) action upon false representation by plaintiff; (4) loss, harm, or damage proximately resulting from false representation. England contends that Compass committed fraud by retaining her as an employee under false pretenses. However, Compass has demonstrated that there is no evidence showing that England has suffered loss, harm, or damage proximately resulting from any alleged misrepresentation regarding her employment. In response, England has failed to introduce sufficient evidence to show that she actually suffered some form of resulting harm.

## VI.   Conclusion.

(1)     The movant's motion for summary judgment as to England's sex discrimination claim will be **granted;**

(2)     The movant's motion for summary judgment as to England's retaliation claim will be **granted;**

26

(3)    The movant's motion for summary judgment as to England's Equal Pay Act Claim will be **granted;**

(4)    The movant's motion for summary judgment as to England's defamation claim will be **granted;**

(5)    The movant's motion for summary judgment as to England's invasion of privacy claim will be **granted;**

(6)    The movant's motion for summary judgment as to England's intentional interference claim will be **granted;**

(7)    The movant's motion for summary judgment as to England's breach of contract claim will be **granted** as to the 1996 bonus;

(8)    The movant's motion for summary judgment as to England's breach of contract claim will be **denied** as to the 1994 bonus;

(9)    The movant's motion for summary judgment as to England's fraud claims will be **granted.**

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _13ᵗʰ_ of  September, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE